# United States Court of Appeals
## For the First Circuit

No. 04-1982

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN J. LAVOIE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, Jr.,[*] District Judge.

Elizabeth L. Prevett, Federal Defender Office, for appellant.
John M. Hodgens, Jr., Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, were on brief,
for appellee.

December 22, 2005

---

[*] Of the District of New Hampshire, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  A jury convicted defendant John J. Lavoie of willfully evading federal income taxes.  Lavoie appeals, contending that the evidence was insufficient for a jury to find that he acted willfully.  For the reasons presented herein, we affirm.

## I.

John J. Lavoie ("Lavoie") was the sole proprietor of a business engaged in the installation and repair of heating and air conditioning systems.  As a business owner, he was required to file with his income tax return a Schedule C form containing the details of his business profits and losses.  As of 1993, Lavoie had yet to file his 1990, 1991, and 1992 tax forms.  After being contacted by the Internal Revenue Service ("IRS"), Lavoie hired Robert Reed ("Reed"), an accountant, to complete his tax forms.

Reed asked Lavoie either to supply him with his business records or to create a summary of his business profits and losses.  Because his business records were not organized, Lavoie chose the latter and created a one-page summary sheet.  On the first six lines, Lavoie listed gross receipts and costs of goods sold for the years 1990, 1991, and 1992.  For the three tax years, Lavoie reported gross receipts of $33,105, $39,342, and $43,531; and he reported costs of goods of $32,598, $38,863, and $36,452.  The rest of the sheet listed deductible business expenses such as rent,

truck repairs, and advertising. Lavoie discussed this sheet with Reed, and Reed made notes on the sheet.

From this one-page summary sheet, Reed prepared Lavoie's tax forms. Reed sent only the signature pages of the tax forms to Lavoie, who signed and returned them to Reed. Reed filed the forms with the IRS. The IRS then contacted Reed, requesting an audit of Lavoie's 1992 return. Lavoie provided Reed his business records, and Reed discovered that Lavoie had substantially underreported his gross receipts.

While the audit was pending, Lavoie retained a second accountant, Michael O'Malley ("O'Malley"), to prepare tax forms for 1991 and 1992. Lavoie told O'Malley that he was being audited but did not tell him that Reed had previously filed tax forms for those years. Lavoie provided O'Malley with a more complete accounting of his gross receipts and business expenses than he had provided to Reed. O'Malley prepared tax forms for Lavoie, but Lavoie did not file them.

The IRS found that Lavoie had substantially underreported his gross receipts on his 1990, 1991, and 1992 tax returns. The government and Lavoie stipulated at trial that Lavoie's gross receipts for the three years were $79,034, $97,561, and $85,301. For each of the three years, the IRS's computation of the gross receipts was about double what Lavoie had reported. The government and Lavoie also stipulated at trial that Lavoie's costs of goods

sold for the three years were $32,598, $72,324, and $71,388. Because Lavoie did not have accurate records for 1990, the stipulated value for the cost of goods sold for that year was the same that Lavoie had reported to Reed. For the other two years, the stipulated costs of goods sold were computed from Lavoie's records and were about double what Lavoie had reported. At trial, a government witness testified that for the three tax years Lavoie had underpaid his taxes by $11,326, $5,584, and $1,817.

A jury convicted Lavoie of three counts of tax evasion. The court sentenced him to twenty-eight months probation including four months of home detention. At the close of the government's case and then again after the verdict, Lavoie moved for a judgment of acquittal for insufficient evidence of willfulness. The court denied both of his motions. Lavoie now appeals, again arguing insufficient evidence of willfulness on his part.

## II.

In order to convict Lavoie for tax evasion, the government must show (1) the existence of a tax deficiency, (2) an affirmative act constituting an evasion or attempted evasion of the tax, and (3) willfulness. Sansone v. United States, 380 U.S. 343, 351 (1965); 26 U.S.C. § 7201. On appeal, Lavoie argues only that there was insufficient evidence for a jury to find willfulness.

We review the trial judge's finding of sufficient evidence de novo. United States v. Carucci, 364 F.3d 339, 343 (1st

-4-

Cir. 2004). We will affirm if "after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994).

In order to prove that Lavoie acted willfully, the government must show more than just that he acted in "careless disregard for the truth." United States v. Pomponio, 429 U.S. 10, 12 (1976). A mere underreporting of income does not require a finding of willfulness as the underreporting could be caused by inadvertence or negligence. See Holland v. United States, 348 U.S. 121, 139 (1954); United States v. Olbres, 61 F.3d 967, 972 (1st Cir. 1995). Willfulness requires the "intentional violation of a known legal duty." Pomponio, 429 U.S. at 12. Willfulness can be established by showing that Lavoie "fil[ed] returns with knowledge that he should have reported more income than he did." United States v. Zanghi, 189 F.3d 71, 81 (1st Cir. 1999). "[C]ircumstantial evidence of willfulness can be sufficient to sustain a conviction." United States v. Boulerice, 325 F.3d 75, 80 (1st Cir. 2003).

The government asserts that Lavoie willfully evaded taxes when he underreported both his gross receipts and his costs of goods by about a factor of two. In defense, Lavoie primarily

-5-

claims that he confused the terminology of gross receipts and net receipts and notes that his reported gross receipts were close in value to his actual net receipts. Lavoie does not explain why he underreported his costs of goods by a factor of two, even though this would have erroneously increased his tax burden. The government put forth five factors in arguing that the evidence was sufficient for a reasonable jury to find that Lavoie acted willfully, and we consider them in turn.

The government first argues that the substantial understatement of gross receipts shows that Lavoie acted willfully. In response, Lavoie argues that a mere understatement is not sufficient to show willfulness. Depending on the specific facts, an understatement could suggest willfulness or could suggest a mistake through inadvertence, negligence, or gross negligence. The amount of the understatement is certainly probative as to whether an understatement is a mistake or willful. Olbres, 61 F.3d at 971-72. For the years 1990, 1991, and 1992, Lavoie reported gross receipts and costs of goods that were underreported by about a factor of two. The substantial understatements for three separate years strongly suggest that any arithmetic error was willful and not a mistake. Thus, absent another explanation it suggests that Lavoie willfully underreported his gross receipts and costs of goods. Lavoie asserts that he confused the terminology of gross receipts with net receipts and notes that what he reported as gross

receipts was close to his actual net receipts. Because the mistake in terminology and the substantial underreporting of gross receipts are consistent with each other, even a substantial underreporting of gross receipts does not necessarily indicate willfulness. However, this mistake in terminology does not explain why he also underreported his costs of goods by about a factor of two.

Second, the government contends that Lavoie engaged in a three-year pattern of understatement and that this provides further evidence of willfulness. Lavoie rebuts this by arguing that his tax calculations for the three years were computed at one time and thus there is no pattern. Without deciding whether Lavoie's actions can be properly categorized as a pattern, we simply consider what reasonable inferences can be drawn from the underlying facts. The analysis here is no different than for the previous factor. Lavoie's substantial underreporting of gross receipts for the three tax years is consistent with Lavoie's asserted error in terminology between gross receipts and net receipts, but Lavoie's substantial underreporting of costs of goods is not explained by this error in terminology.

Third, the government argues that the one-page summary sheet that Lavoie provided to his accountant Reed provides further evidence of willfulness. Under Lavoie's theory, he computed his net receipts by subtracting his costs of goods from his gross receipts and then mistakenly indicated this figure as "gross

receipts" on the summary sheet. Although under this theory, the costs of goods had already been incorporated into the mistakenly labeled gross receipts, he listed the costs of goods separately. There is no apparent explanation for the additional mistake of underreporting his costs of goods by a factor of two. These mistakes would have persisted despite the fact that Lavoie and Reed discussed the summary sheet and that Reed suggested additional deductions. Under the government's theory, Lavoie simply underreported his gross receipts and costs of goods in order to evade taxes. Both of these arguments were presented to the jury, and a reasonable jury could credit the government's theory over Lavoie's.

The government also notes that Reed gave Lavoie the option of creating a summary sheet or giving Reed the underlying business records, and that Lavoie opted to create a summary sheet as part of his plan to avoid taxes. Lavoie argues that he created the summary sheet because his records were in disarray, which is supported by other evidence. Lavoie's creation of a summary sheet is consistent with a plan to avoid income taxes and thus provides some further evidence of willfulness, but given the plausible innocent alternative, this evidence is not highly probative.

Fourth, the government argues that Lavoie's maintenance of detailed business expense records shows that he understood the difference between gross receipts and net receipts. While there is

some merit to this argument, we do not find it highly persuasive. The fact that Lavoie knew that he could deduct business expenses suggests that he knew the difference between gross and net receipts, but Lavoie could have grasped the concept of business deductions and still confused the terminology.

Finally, the government finds fault with Lavoie's retention of a second accountant to complete his 1991 and 1992 returns while he was being audited. The government notes that Lavoie did not fully explain the circumstances to O'Malley and posits that Lavoie acted to "mitigate his earlier fraud with correct returns, or to off-set his prior underreporting of gross receipts by coming up with previously unclaimed expenses." We find this argument wholly unpersuasive. Lavoie had no need or reason to explain to O'Malley the prior history of the 1991 and 1992 tax filings. Further, Lavoie can only be commended for seeking a more accurate accounting of his tax obligations.

Lavoie argues that the only piece of evidence the government offered to show he acted willfully was the one-page summary sheet. We agree with Lavoie that nearly all of the evidence of willfulness derives from the summary sheet, but we do not think that this necessarily makes the evidence of willfulness insufficient. Convictions are based on the weight of the evidence and not the number of evidentiary submissions. Finally, Lavoie notes that he only saw the signature page of his completed tax

returns and thus could not have known that the figures were incorrect. Because Reed prepared the returns based entirely on the one-page summary sheet prepared by Lavoie, we find this argument meritless.

### III.

The evidence of Lavoie's willfulness in evading taxes is not overwhelming. From the evidence presented at trial, inferences could be drawn in favor of willful tax evasion or in favor of a misunderstanding of the difference between gross receipts and net receipts. Taking all inferences in favor of the government, we believe that a reasonable jury could find beyond a reasonable doubt that Lavoie willfully evaded taxes.

**<u>Affirmed</u>**.