# United States Court of Appeals
## For the First Circuit

No. 05-1506

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL H. GEORGE, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Howard, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

John J.E. Markham, II, with whom Markham & Read was on brief, for appellant.
Michael J. Pineault, Assistant United States Attorney with whom Michael J. Sullivan, United States Attorney was on brief, for appellee.

May 24, 2006

**HOWARD**, **Circuit Judge**.  Daniel H. George, Jr., was convicted of four counts of tax evasion, see 26 U.S.C. § 7201, and sentenced to thirty months' imprisonment.  George says the district court plainly erred in failing to instruct the jury on an obvious (but unargued) defense theory.  He also challenges the denial of his motion for a new trial.  We affirm.

## I.

We present the facts in the light most favorable to the verdict.  See United States v. Medina-Martinez, 396 F.3d 1, 3 (1st Cir. 2005).  George is a self-taught chemist who operated a nutritional supplement business out of his home in Rockport, Massachusetts.  George, who holds five patents, researched and developed his supplements at various Boston-area university laboratories and libraries.

George's business dealings generally took two forms. First, he provided research services, raw materials, and finished supplements to various health supplement companies.  Second, he directly administered supplements for a host of maladies from his front porch to various individuals and groups that came to see him in Rockport.  In both lines of business, George typically required payment in advance (by cash or check, with a preference for cash) and steadfastly refused to provide receipts or other documentation of his sales and services.  He ultimately accumulated over six million dollars in various bank accounts.

Through a series of events, including investigations by the Drug Enforcement Administration and New Jersey authorities who were looking into the murder of George's friend and business associate, Richard Breitbarth, George's business came under scrutiny by the Internal Revenue Service (IRS). The IRS discovered that George had never paid taxes on any of his business income. An IRS agent interviewed George, who maintained that he neither provided research services for pay nor sold supplements or their constituent raw materials. Instead, George stated that all the monies that he had received were "gifts" or "donations" from his patrons, who supported his goal of building a non-profit research laboratory. In 2003, George was indicted on four counts of tax evasion for the years 1996, 1997, 1998, and 1999.

At trial, the government called several of George's clients, who testified that they had paid for products or services and that their payments were not gifts or donations. One witness testified that George increased the price of one of his products ninefold when it began to achieve commercial success. Another testified that George called him after the indictment to do "damage control" and offered to refund all monies that the client had paid if the client would sign a statement that the payments had been donations.

Three New Jersey detectives who had investigated the Breitbarth murder testified that George had made no mention of

gifts or donations, but rather acknowledged a business relationship with Breitbarth which included George's receiving payments for his research services twice a month. Two IRS agents testified about the aforementioned IRS interview, George's bank accounts,[1] and his tax deficiency. The government established income of approximately $900,000 for the relevant years, which yielded a tax liability of approximately $252,000. The government's case emphasized two primary acts of evasion by George: (1) using false Social Security numbers to open bank accounts, see supra note 1; and (2) making false statements to the IRS about the nature of his activities.[2]

George did not take the stand, but called witnesses and presented documentary evidence. The defense maintained that the monies George received were non-taxable gifts or donations. The defense painted George as a reclusive and eccentric genius, emphasizing that he lived as a pauper in a small house supported only by Social Security disability payments of approximately $9,000 a year. The defense called attention to the fact that George had

---

[1] George had opened fifteen bank accounts at ten different banks using seven different Social Security numbers and transferred large sums between the accounts. The Social Security numbers utilized included his actual Social Security number and six false numbers, which generally contained transpositions of his actual number. The different Social Security numbers made it difficult for the IRS to track George's interest income.

[2] To convict a defendant of tax evasion, the prosecutor must prove a tax deficiency, an affirmative act constituting an evasion, and willfulness. See United States v. Lavoie, 433 F.3d 95, 97 (1st Cir. 2005).

never used any of the supplement proceeds for himself, but had saved the money with the goal of building a non-profit research foundation. Finally, the defense highlighted the fact that, following his indictment, George had established the Biogenesis Foundation, Inc., which received tax-exempt status from the IRS under 26 U.S.C. § 501(c)(3).[3]

As to the evasion issue, the defense suggested that the use of incorrect Social Security numbers at some banks was accidental and caused by George's quirkiness. The defense emphasized that all the other information that George provided to the banks, including his name and address, was accurate. As to the statements to the IRS agent, the defense argued that George was genuinely confused about whether the payments he received were taxable because he intended to use them for his charitable foundation.

The jury convicted George on all counts. Subsequently, George hired new counsel and moved for a new trial on the basis of newly discovered evidence in the form of (1) five Social Security Administration and Bureau of Prison documents from the 1970's and early 1980's which contained inaccurate Social Security numbers for

_____

[3] Section 501(c)(3) provides an exemption from taxation for "[c]orporations . . . organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or education purposes . . . [so long as] no part of the net earnings of [the corporation] inures to the benefit of any private shareholder or individual . . . ." 26 U.S.C. § 501(c)(3).

George; (2) post-conviction reports by psychiatrists opining that George suffered from Asperger's Syndrome, a mental disorder; and (3) an expert report opining that the sales income was not taxable because George was operating a tax-exempt "social welfare organization" pursuant to 26 U.S.C. § 501(c)(4).[4]  The district court denied the motion and sentenced George to 30 months' imprisonment.  This appeal followed.

## II.

George presents us with two arguments.  First, he contends that the district court committed plain error in failing to instruct the jury sua sponte about Section 501(c)(4) organizations.  Second, he argues that the district court erred in denying his motion for a new trial.[5]

---

[4]  Section 501(c)(4) provides a tax-exemption for "organizations not organized for profit but operated exclusively for the promotion of social welfare . . . the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes . . . " with the limitation that the exemption "shall not apply to an entity unless no part of the net earnings of such entity inures to the benefit of any private shareholder or individual."  26 U.S.C. § 501(c)(4).

Generally speaking, the primary differences between Section 501(c)(3) organizations and Section 501(c)(4) organizations are that contributions to the former are tax deductible while those to the latter are not, and the latter can engage in some political activities while the former cannot.  See generally Federal Election Comm'n v. Beaumont, 539 U.S. 146, 150 n.1 (2003).

[5]  George's brief hints at additional due process arguments but fails to develop them sufficiently to warrant further mention.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  George also criticizes trial counsel's performance, but fact-specific claims of ineffective assistance of counsel must be pursued via 28 U.S.C. § 2255.  See United States v. Mercedes Mercedes, 428 F.3d

A. Jury Instruction

George argues that the district court plainly erred in failing to instruct the jury sua sponte about § 501(c)(4) because evidence at trial made the applicability of a defense based upon this statute "obvious." George asserts that such an instruction would have resulted in an acquittal because George was "obviously" running a non-profit scientific foundation, and sales by such an entity are exempt from federal taxation. The absence of a § 501(c)(4) instruction was especially harmful, George says, because the district court inaccurately instructed the jury that George's income was either taxable sales income or a product of tax-exempt gifts and donations. We disagree.

George concedes that he did not request such an instruction in a timely manner, and that our review must be conducted for plain error pursuant to Fed. R. Crim. P. 30(d) and 52(b). See Medina-Martinez, 396 F.3d at 8. Thus, to prevail, George must show "that (1) an error occurred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id.; see also United States v. Frady, 456 U.S. 152, 163 (1982) (failure to give a particular instruction constituted an "error so plain the trial judge and prosecutor were derelict in countenancing it, even absent

355, 361 (1st Cir. 2005).

-7-

the defendant's timely assistance in detecting it"). George's claim fails for several reasons.

First, George is claiming an entitlement to an instruction that he did not suggest relating to a defense that he did not assert. "Where a defendant does not offer a particular instruction, and does not rely on the theory of defense embodied in that instruction at trial, the district court's failure to offer an instruction on that theory sua sponte is not plain error." United States v. Montgomery, 150 F.3d 983, 996 (9th Cir. 1998); cf. United States v. Lebron-Cepeda, 324 F.3d 52, 60 (1st Cir. 2003)(per curiam)("[I]t would be most unusual for us to find that a district court erred in failing to give a limiting instruction that was never requested").

Second, any § 501(c)(4) instruction would have been contrary to the defense theory that George actually relied upon: that the monies in question were gifts and donations from George's patrons to fund his research. "If an instruction is inconsistent with the defense's theory of the case, it is inappropriate." United States v. Eberhart, 434 F.3d 935, 940 (7th Cir. 2006); see also United States v. Fort, 998 F.2d 542, 547 (7th Cir. 1993). The district court is not required "to embark on an intellectual frolic of its own and instruct the jury on a defense [that the defendant] did not choose to assert and to prove." United States v. Simmonds, 931 F.2d 685, 688 (10th Cir. 1991).

-8-

Finally, George was entitled only to defense theory instructions "for which there [was] sufficient evidentiary support," United States v. Lopez-Lopez, 282 F.3d 1, 18 (1st Cir. 2002). And the evidence here fell short of supporting a § 501(c)(4) instruction.

To qualify for a § 501(c)(4) exemption, there must be (1) an organization, that (2) is not operated for profit, and that is (3) operated exclusively for the promotion of social welfare. See 26 U.S.C. § 501(c)(4); 26 C.F.R. § 1.501(c)(4)-1. Such an organization does not operate exclusively for the promotion of social welfare if it "is carrying on business with the general public in a manner similar to organizations which are operated for profit." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii).

George dealt in health products, but that does not automatically mean that he worked for general social welfare, particularly when his products were offered only to a select clientele rather than the public at large. See generally IHC Health Plans, Inc. v. Comm'r of Internal Revenue, 325 F.3d 1188, 1197-98 (10th Cir. 2003)(not every activity that promotes health is entitled to a tax-exemption). Additionally, the evidence suggests that George did not operate an "organization," given that he failed to engage in any traditional business behavior, such as maintaining records, hiring employees, or maintaining a formal office. Finally, George's revenue from the sale of his products far

exceeded his costs, and he deposited this profit into bank accounts that he exclusively controlled. That George may have intended to place these proceeds into a tax-exempt organization at some future point does not alter the fact that they were business profits available for his use. See 26 U.S.C. § 502 (profits of business not tax-exempt simply because profits ultimately paid to tax-exempt organization). In the end, George's business did not differ significantly from other for-profit suppliers of health supplements. Cf. Federated Pharmacy Servs., Inc. v. Commissioner of Internal Revenue, 625 F.2d 804, 808 (8th Cir. 1980)(defendant sold prescription drugs to public and that activity was presumptively commercial).[6]

B. New Trial

George contends that the evidence he submitted post-trial of five prior "innocent" misstatements of his Social Security number eviscerates the government's case on the issue of evasion. George significantly overstates the exculpatory value of this evidence.

A defendant is entitled to a new trial on the basis of newly discovered evidence only if he can establish that (1) the

---

[6] That George received Section 501(c)(3) status for his foundation post-indictment is of no consequence. The IRS's decision to grant Section 501(c)(3) status is based entirely on the applicant's unverified representations, and George's representations in the application were greatly at odds with the evidence at trial. See Zimmerman v. Cambridge Credit Counseling Corp., 409 F.3d 473, 476-77 (1st Cir. 2005).

evidence was unavailable or unknown at the time of trial; (2) the defendant's failure to uncover the evidence earlier was not due to a lack of diligence; (3) the tendered evidence is material and not simply impeaching or cumulative; and (4) the new evidence will probably result in an acquittal if the defendant is retried. United States v. Rodriguez-Marrero, 390 F.3d 1, 14 (1st Cir. 2004), cert. denied, 544 U.S. 912 (2005).  "For newly discovered evidence to warrant a retrial in a criminal case, the existence of the required probability of reversal must be gauged by an objectively reasonable appraisal of the record as a whole, not on the basis of wishful thinking, rank conjecture, or unsupportable surmise." United States v. Natanel, 938 F.2d 302, 314 (1st Cir. 1991).  We review a district court's denial of a motion for a new trial for manifest abuse of discretion.  United States v. Rivera Rangel, 396 F.3d 476, 485-86 (1st Cir. 2005).

The district court did not manifestly abuse its discretion in concluding that George's "new" evidence, if admitted at trial, was unlikely to result in an acquittal.  Most of the tendered misstatements were made by third parties inputting data. Further, at trial, the IRS agent testified that George had no difficulty recalling his Social Security number at his interview. And most significantly, the accounts that George used for his Social Security disability benefits utilized his correct number, while the accounts containing the much larger income that he had

-11-

lied about all utilized incorrect numbers. George's new evidence creates no realistic likelihood of acquittal. <u>See generally</u> <u>United States</u> v. <u>Villarman-Oviedo</u>, 325 F.3d 1, 15 (1st Cir. 2003)(a new trial warranted only "where the evidence preponderates heavily against the verdict")(internal citation and quotation omitted).

### III.

For the reasons stated above, George's conviction is **<u>affirmed</u>**. In light of our holding, George's pending bail motion is **<u>denied</u>**.