**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 08-1482

JORGE E. APONTE-HERNÁNDEZ,

Plaintiff, Appellant,

v.

ANA P. CRUZ-VÉLEZ, Contractor Prosecutor for the Government of Puerto Rico, and HÉCTOR M. MONTAÑEZ-REYES, Contractor Prosecutor for the Government of Puerto Rico,

Defendants, Appellees,

ANÍBAL ACEVEDO-VILÁ, Governor of Puerto Rico, JOSÉ PÉREZ-RODRÍGUEZ, Contractor Prosecutor for the Government of Puerto Rico, JANE DOE, Contractor Consultant for the Government of Puerto Rico, INSURANCE COMPANIES A, B, C,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José A. Fusté, U.S. District Judge]

Before
Torruella, Selya, and Leval,[*]
Circuit Judges.

John F. Nevares with whom Xiomara Colón Rodríguez and John F. Nevares & Associates, P.S.C. were on brief for appellant. Leticia Casalduc-Rabell, Assistant Solicitor General, with whom Maite D. Oronoz Rodríguez, Acting Solicitor General, and Ileana Oliver-Falero, Acting Deputy Solicitor General, were on brief for appellees.

[*]Of the Second Circuit, sitting by designation.

July 2, 2009

**LEVAL, <u>Circuit Judge</u>**. Plaintiff Jorge E. Aponte-Hernández appeals from the judgment of the United States District Court for the District of Puerto Rico in favor of Defendants Ana Cruz-Vélez and Héctor Montañez-Reyes based upon the jury's verdict after trial, dismissing Plaintiff's suit brought under 42 U.S.C. § 1983. Plaintiff's complaint alleged that the defendants engaged in malicious and retaliatory prosecution of criminal charges related to his role as director of the Puerto Rico Office of Management and Budget ("OMB"). He contends on appeal that the jury's verdict was against the weight of the evidence and that the district court should therefore have granted him a new trial. We find the evidence appropriately sustained the verdict and therefore affirm the judgment.

## BACKGROUND

Aponte-Hernández was director of Puerto Rico's OMB in the 1990s. In 1997 and 1998, his office was responsible for a real estate transaction in which the government purchased an office building at four times the price at which it was originally offered. The transaction was reviewed by a Blue Ribbon Commission created by the then-governor of Puerto Rico to investigate corruption. The Blue Ribbon Commission determined that Aponte-Hernández's role in the transaction exhibited a lack of professionalism and that his agency had acted in a "gross and unforgivably negligent manner." Accordingly, the Blue Ribbon

-3-

Commission recommended that the Puerto Rico Department of Justice consider filing a civil case against Aponte-Hernández. The Department of Justice referred the matter to a Special Independent Prosecutor ("SIP") tasked with investigating public officials. Upon the expiration of the contract of the person initially acting as SIP on Plaintiff's case, Defendant Cruz-Vélez took over the prosecution, with Defendant Montañez-Reyes acting as her deputy. Cruz-Vélez recommended and ultimately brought criminal charges against Aponte-Hernández for violating 33 L.P.R.A. § 4391, which imposes criminal liability on a public official who "[n]eglects or fails to safekeep or disburse public funds as prescribed by law." At the eventual criminal trial of those charges, Aponte-Hernández was "peremptorily" acquitted by the trial judge for "total lack of evidence."

Plaintiff then filed this action in the United States District Court against Cruz-Vélez, Montañez-Reyes, and José Pérez-Rodríguez, who worked with them on the prosecution of Plaintiff's case.[1] The complaint asserted claims under 42 U.S.C. §§ 1983, 1985, and 1986, alleging that the defendants engaged in malicious and retaliatory prosecution. The district court eventually

---

[1]His complaint also named the governor of Puerto Rico, as well as various John Doe defendants who were never identified.

dismissed all claims except the claims against Cruz-Vélez and Montañez-Reyes pursuant to § 1983.[2]

During trial Aponte-Hernández took the witness stand and called several witnesses, including his former OMB subordinate Juan Emmanuelli, the original prosecutor on his case, his former attorney, and the appraiser and original owner of the property at issue in the investigation, as well as Defendants Cruz-Vélez and Pérez-Rodríguez. The defendants presented direct testimony by Cruz-Vélez and otherwise relied on cross-examination of the plaintiff's witnesses.

After a brief deliberation, the jury delivered a verdict in favor of the defendants. Plaintiff moved, pursuant to Fed. R. Civ. P. 59, for a new trial on the ground that the verdict was against the weight of the evidence. Before sending the case to the jury, the trial judge expressed his view (out of the earshot of the jury) that "the prosecution of Mr. Aponte was a total abuse. . . . There was no reason in law or in fact to proceed with that prosecution. . . . I think this is a case of malicious prosecution." Nonetheless, the court denied the motion for a new trial. The trial court explained that the case was not for him, but for the jury to decide. The judge added: "This record fully

_____

[2]Aponte-Hernández does not appeal from the dismissal of the claims against Cruz-Vélez and Montañez-Reyes under §§ 1985 and 1986 or the dismissal of the claims against the other defendants.

-5-

supports the jury verdict.  The jury could have easily" found for the defendants.

## DISCUSSION

On appeal, Plaintiff contends that the jury's verdict in favor of Cruz-Vélez and Montañez-Reyes regarding his claim under § 1983 was against the weight of the evidence, and that the district court erroneously denied his motion for a new trial.  In order to prevail in establishing such a claim on appeal, the appellant must show that the district court's ruling was "a manifest abuse of discretion," Marcoux v. Shell Oil Prods. Co. LLC, 524 F.3d 33, 40 (1st Cir. 2008) (quoting United States v. George, 448 F.3d 96, 101 (1st Cir. 2006)), and that the weight of the evidence is "grotequely lopsided" in his favor, Freeman v. Package Machinery Co., 865 F.2d 1331, 1334 (1st Cir. 1988).

The only issue in significant dispute at trial was whether the defendants acted with malice in the face of clear absence of probable cause in prosecuting the criminal charges against the Plaintiff.  Because at the initiation of the criminal case against him a Puerto Rico court had found probable cause to charge him, Aponte-Hernández attempted to show that the defendants knowingly presented false or tainted evidence at the probable cause hearing to secure this finding.

The main evidence Plaintiff presented in support  of his claim was as follows.  Plaintiff's former attorney testified that

one of the original prosecutors (who was replaced by the defendants) told him that there was no evidence against Aponte-Hernández, but to avoid prosecution, Aponte-Hernández would have to provide evidence linking other officials to the real estate deal under investigation. Plaintiff also asserted that the prosecutors' malice was demonstrated by the fact that the charging document, prepared by the defendants, accused him of "unlawful, willful, malicious, criminal and intentional" conduct, while, as Cruz-Vélez admitted on cross-examination, the law required a showing of only negligence on his part to sustain a criminal conviction. Plaintiff relied also on Cruz-Vélez's admission that she introduced a "draft" of an expert report at the probable cause hearing to support the argument that the real estate in question had been appraised at an inflated value, and that she introduced a document regarding the initial offer to sell the real estate in question, three pages of which had not been faxed to the OMB at the time. Finally, Plaintiff relied on the testimony of his former subordinate Emmanuelli, to the effect that he felt threatened and harassed by the prosecutors when they interviewed him, and that this caused him to sign an immunity agreement and alter his testimony. Plaintiff suggests that this evidence was uncontroverted at trial, and overwhelmingly demonstrated the defendants' malice.

In fact, however, this evidence was controverted through the direct testimony of Cruz-Vélez and through cross-examination of

Plaintiff's witnesses. In her testimony, Cruz-Vélez offered alternative explanations for the actions that Plaintiff characterized as malicious and fraudulent. For example, Cruz-Vélez testified that the phrase "unlawful, willful, malicious, criminal and intentional" in the charging document was pro forma language conventionally used for accusations filed in state court and did not manifest a desire on her part to smear the plaintiff. As for the prior prosecutor's comments to Aponte-Hernández's former counsel, she testified that she was unaware of them, and that, in any event, her predecessor had said nothing of the kind to her. In addition she testified that if any of the evidence she introduced at the probable cause hearing was questionable, she had presented it innocently, and without malice or intent to deceive. Finally, Cruz-Vélez emphasized that the decision to prosecute was consistent with the findings of the Blue Ribbon Commission and the Department of Justice. And as for the testimony of Emmanuelli, he acknowledged on cross-examination by the defendants that the only alterations to his testimony suggested by the prosecutors were stylistic rather than substantive, and confirmed that the testimony he gave in the criminal proceeding against Aponte-Hernández was true.

Accordingly, all of Plaintiff's evidence of malice and fraud on the part of the defendants was controverted. With evidence on both sides of the crucial issue of the defendants'

malice, the jury could properly have credited Cruz-Vélez's testimony. The jury could also have weighed the conflicting evidence and concluded that Aponte-Hernández, who had the burden of proof, failed to prove malice or a lack of probable cause by a preponderance of the evidence.

In short, the evidence was disputed; it was not "grotesquely lopsided" in favor of Aponte-Hernández. Freeman, 865 F.2d at 1334. In these circumstances, it was reasonable for the jury to find in favor of the defendants, and the trial judge acted well within his discretion in denying Plaintiff's motion for a new trial.

In support of his claim that the district judge abused his discretion in declining to grant a new trial, Plaintiff points to the trial judge's own statements expressing his opinion that the prosecution was malicious. The problem with Plaintiff's reliance on the trial judge's remarks is that, in denying Plaintiff's motion for a new trial, the trial judge recognized that conflicting evidence, and observed that the jury's verdict was reasonably supported by the evidence. In light of the disputed evidence, the trial judge and the jury might well have credited, and discredited, different versions of the contested facts and drawn different, but equally permissible, inferences from the facts. See Freeman, 865 F.2d at 1334. After stating his view that the Plaintiff had been the victim of malicious prosecution, the judge added that,

notwithstanding his personal opinion, the case was for the jury to decide.

There was evidence which, if credited by the jury, supported a verdict in the defendants' favor. The evidence was not "grotesquely lopsided." Id. Accordingly, the trial court did not abuse its discretion in refusing to set aside the jury verdict and grant a new trial.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.