# United States Court of Appeals
## For the First Circuit

No. 15-2305

DANIEL H. GEORGE, JR.,

Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL FROM THE DECISION OF THE
UNITED STATES TAX COURT

Before

Torruella, Lynch, and Barron,
<u>Circuit Judges</u>.

John J.E. Markham, II, with whom Markham & Read was on brief, for appellant.

Anthony T. Sheehan, Attorney, Tax Division, Department of Justice, with whom Caroline D. Ciraolo, Acting Assistant Attorney General, and Teresa E. McLaughlin, Attorney, Tax Division, were on brief, for appellee.

September 13, 2016

**TORRUELLA**, **Circuit Judge**.    Daniel H. George, Jr., appeals a tax court decision affirming a determination by the Commissioner of the Internal Revenue Service ("IRS") that he owed $3.790 million in income taxes and penalties on $5.65 million in bank deposits he made and interest earned from 1995 to 2002. George argues that these deposits were not his taxable personal income but the program income of Biogenesis Foundation, Inc. ("Biogenesis"), a social welfare organization that had tax-exempt status pursuant to section 501(c)(4) of the Internal Revenue Code, 26 U.S.C. § 501(c)(4).    We agree with the tax court's determination that an organization distinct from George did not exist during the applicable tax years and affirm.

## I.

Between 1995 and 2002, George, a self-taught chemist, created his own health supplements.  The proceeds from the sale of these supplements formed the basis of the bank deposits at issue in this appeal.

George conducted experiments and created mineral, herbal, and chemical supplements in his home in Rockport, Massachusetts.   George also worked with health supplement companies that provided him with raw materials, equipment, and feedback. In turn, these companies purchased George's supplements, which they incorporated into their own products.   The supplement

-2-

companies dealt with George directly, viewing him as a vendor, and paid him either in cash or by check.

In addition to his dealings with the supplement companies, George sold his supplements directly to individuals who came to his Rockport house. Some of these individuals formed a "core group," members of which promoted George's supplements through word of mouth and at meetings where they sold George's supplements to other people.

The core group members also assisted George in holding retreats where he discussed health and spirituality and provided his supplements to attendees. Between 8 and 24 people participated in any given retreat and paid $300 to $1000 each to attend. The core group members provided services, such as cooking and organizing transportation, in lieu of paying fees. Part of the fees paid by nongroup attendees went towards reimbursing core group members for the costs of the retreats. George also received a portion of the fees as payment for the supplements he administered.

George did not issue receipts or otherwise document the payments he received from the supplement companies or individuals. The only record of George's transactions was his deposit of these funds into fourteen different personal bank accounts he maintained. George did not spend any of the money he received

from his activities.  Rather, George covered his personal expenses using Social Security disability payments he received.

In 2002, the IRS began investigating George.  During an interview with an IRS agent, George admitted he had not paid any taxes since the 1970s.[1]  George explained that he was hoping to accrue $10 million to set up a foundation and non-profit research laboratory.  George was subsequently charged with and convicted of tax evasion in violation of 26 U.S.C. § 7201 based on his failure to pay taxes in the tax years 1996, 1997, 1998, and 1999. The United States District Court for the District of Massachusetts sentenced George to thirty months' imprisonment.  We upheld George's conviction in United States v. George ("George I"), 448 F.3d 96 (1st Cir. 2006).

## II.

In May 2003, six weeks after his tax evasion indictment, George incorporated Biogenesis.  That July, George applied for tax-exempt status for Biogenesis as a charitable organization under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  In the application, George certified that he was filing for tax-exempt status "within 15 months from the end of the

---

[1]  George subsequently filed a tax return claiming he earned twenty-eight dollars in gross income and owed zero dollars in taxes for the 2002 tax year.

-4-

month in which [Biogenesis] was created or formed." The application also described Biogenesis's mission, which was, according to George, to expand upon his research to create supplements for treatments based on cellular regeneration technology and provide health products to those in need. George claimed that Biogenesis would achieve this goal by renting laboratory space and eventually opening its own headquarters. The IRS granted Biogenesis's application in December 2003.

On October 26, 2011, Biogenesis retroactively filed tax forms claiming that it was a section 501(c)(4) organization for the tax years 1996 through 2002. For each of these tax years, Biogenesis reported revenue equal to the deposits plus interest earned in George's personal bank accounts (excluding the bank account in which George's Social Security payments were deposited).

The IRS subsequently issued a Notice of Deficiency to George stating that he owed taxes, plus penalties, on income earned for the tax years 1995 through 2002. George subsequently filed a petition for review with the tax court, claiming that the deposits and interest earned for those tax years were not his income but Biogenesis's. The tax court rejected George's arguments, finding that no "organization" separate from George existed prior to Biogenesis's incorporation in 2003 and that George's activities

during this period were commercial and did not further social welfare.  As a result, the tax court found George liable for the full amount of the alleged deficiency.[2]  This timely appeal followed.

### III.

"We review decisions of the tax court 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'"  Interex, Inc. v. Comm'r, 321 F.3d 55, 58 (1st Cir. 2003) (quoting 26 U.S.C. § 7482(a)(1)).  Thus, its legal conclusions are reviewed de novo and its factual findings for clear error.  Id.

On appeal, George renews his claim that Biogenesis existed as a section 501(c)(4) tax-exempt organization prior to its formal incorporation in 2003, such that the bank deposits and interest were not taxable as his personal income.  Section 501(c)(4) of the internal revenue code exempts from taxation

> [c]ivic leagues or organizations not organized for
> profit but operated exclusively for the promotion of
> social welfare, or local associations of employees,
> the membership of which is limited to the employees

[2]  The Commissioner also assessed penalties against George, which the tax court upheld.  For tax years 1995 to 2001, the tax court imposed penalties for fraudulent failure to file a tax return pursuant to 26 U.S.C. § 6651(f).  For tax year 2002, the tax court imposed a penalty for fraudulent underpayment of taxes pursuant to 26 U.S.C. § 6663.  George does not appeal these penalties beyond challenging his underlying tax deficiencies.  Thus, the merits of the penalties depend on our assessment of the deficiency claims.

of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

26 U.S.C. § 501(c)(4)(A). George argues that Biogenesis met these requirements in two ways. First, he contends that the tax court should have treated the IRS's 2003 approval of Biogenesis's section 501(c)(3) application as dispositive. Second, George argues that, regardless of its section 501(c)(3) status, the tax court's conclusion that Biogenesis failed to meet section 501(c)(4)'s requirements in the contested tax years was clearly erroneous. As explained below, George was required to prove Biogenesis met all of section 501(c)(4)'s elements and he failed to do so.[3]

## A. **Effect of Biogenesis's Section 501(c)(3) Status**

As a threshold matter, George claims that because Biogenesis qualified as a section 501(c)(3) organization upon the filing of its application, it must have previously fulfilled section 501(c)(4)'s requirements.[4] In support of his argument,

---

[3] We also reject George's contention that the tax court analyzed whether Biogenesis qualified as a "civic organization" under section 501(c)(4) rather than a social welfare organization. As explained below, the tax court's decision relied primarily on its finding that no organization separate from George existed and we see no error in this analysis. Any distinction between civic and social welfare organizations does not affect this conclusion.

[4] "Generally speaking, the primary differences between Section 501(c)(3) organizations and Section 501(c)(4) organizations are that contributions to the former are tax deductible while those to the latter are not, and the latter can engage in some political

George cites Treasury Regulation § 1.501(c)(4)-1(a)(2)(i), which states that "[a] social welfare organization will qualify for exemption as a charitable organization if it falls within the definition of charitable set forth in paragraph (d)(2) of § 1.501(c)(3)-1." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i). George interprets this regulation as meaning that an organization may qualify as tax exempt under section 501(c)(4) "if its activities would qualify for approval . . . under section 501(c)(3)."

This argument is easily disposed of by our decision in George I. George argued in his tax evasion case that the district court should have sua sponte instructed the jury on section 501(c)(4) organizations. We rejected this contention and stated that Biogenesis's section 501(c)(3) status was of "no consequence" because the IRS approves applications based on "an applicant's unverified representations." George I, 448 F.3d at 101 n.6 (citing Zimmerman v. Cambridge Credit Counseling Corp., 409 F.3d 473, 476-77 (1st Cir. 2005)). Once an issue actually went to trial, we noted, courts could determine whether the applicant's representations matched the evidence. See id.; see also 26 U.S.C.

---

activities while the former cannot." George I, 448 F.3d at 99 n.4. The Commissioner does not dispute George's claim that, unlike a section 501(c)(3) organization, a section 501(c)(4) organization need not file a formal application with the IRS to claim tax-exempt status. We assume for the sake of this appeal, without deciding the issue, that George is right."

§ 6110(k)(3) ("[A] written determination [by the IRS] may not be used or cited as precedent.").

This principle is equally applicable to George's current tax delinquency case. Biogenesis's section 501(c)(3) application contained only George's unverified representations. These representations did not show how Biogenesis actually operated (if at all) from tax years 1995 to 2002. Thus, the tax court correctly looked at whether the evidence presented at George's trial showed that a tax-exempt organization existed within the meaning of section 501(c)(4).

## B. <u>Organization Requirement</u>

Alternatively, George claims that the tax court erred in determining that Biogenesis did not independently fulfill section 501(c)(4)'s requirements. "To qualify for a § 501(c)(4) exemption, there must be (1) an organization, that (2) is not operated for profit, and that is (3) operated exclusively for the promotion of social welfare." <u>George I</u>, 448 F.3d at 100 (citing 26 U.S.C. § 501(c)(4); 26 C.F.R. § 1.501(c)(4)-1). The party claiming the exemption bears the burden of demonstrating that it satisfies all of the prerequisites by a preponderance of the evidence. <u>See</u> <u>IHC Health Plans, Inc.</u> v. <u>Comm'r</u>, 325 F.3d 1188, 1193 (10th Cir. 2003); <u>Fed'n Pharmacy Servs., Inc.</u> v. <u>Comm'r</u>, 625 F.2d 804, 806 (8th Cir. 1980).

We agree with the tax court that George failed to prove that an organization distinct from himself existed prior to 2003. In reaching this conclusion, the tax court properly took into account the absence of organizational formalities and the lack of "separation between [George] and his activities."[5]

On appeal, George argues the tax court erred by relying too heavily on formal organizational structures such as his and the core group's failure to "maintain[] financial records, ke[ep] minutes, draft[] organizing documents or bylaws, [or] request[] an employer identification number" as well as the absence of certain required filings. George's argument fails for two reasons. First, it was proper for the tax court to look for objective indicia of organizational form such as filings and records.[6] We

---

[5] The Commissioner's brief urges us to apply the doctrine of collateral estoppel and give the findings in George I preclusive effect for the tax years 1996, 1997, 1998, and 1999. In order for collateral estoppel to apply, the parties "must have actually litigated the facts in question, and those facts must have been essential to a valid and final judgment in a prior action." Morón-Barradas v. Dep't of Educ., 488 F.3d 472, 479 (1st Cir. 2007). Although George argued that the jury should have been instructed on section 501(c)(4) organizations on appeal, the issue whether an organization existed was not litigated in George I. As we noted, George's theory of defense in his criminal case was that the monies he deposited in his bank accounts "were gifts and donations from George's patrons" rather than income of a section 501(c)(4) organization. George I, 448 F.3d at 100. Thus, the issue whether George's core group formed an organization was never presented to the jury in George I.

[6] We also believe that the fact that Biogenesis did not incorporate until 2003, although not dispositive, serves as a

approved the use of such indicia in George I, noting that George was not entitled to an instruction on section 501(c)(4) organizations in part because he "did not operate an 'organization,' given that he failed to engage in any traditional business behavior, such as maintaining records, hiring employees, or maintaining a formal office." 448 F.3d at 101. Other courts have used objective indicia to determine whether an organization had a primarily charitable, rather than commercial, purpose in tax exemption cases. See, e.g., Presbyterian & Reformed Publ'g Co. v. Comm'r, 743 F.2d 148, 155 (3d Cir. 1984). We see no error in the tax court's taking this evidence into account in determining whether an organization existed.

Second, the tax court did not view the lack of organizational formalities as dispositive. Rather, the tax court considered the evidence in the record and, after weighing all these factors, concluded that George and the core group did not operate like an organization in the relevant tax years. As noted by the tax court, one of the core group members did not view herself as a member of an organization. She testified at George's trial that "[Biogenesis] wasn't really an entity at that point that I knew

_____

strong objective indicator that an organization distinct from George did not exist during the applicable tax years. Notably, George certified in his application that he was filing for tax-exempt status within 15 months of Biogenesis's creation.

of. . . . [W]e were just a group of us trying to heal ourselves."[7] The tax court also noted that George was "the sole researcher, analyst, producer, service provider, and scientist," such that "[n]o one in the core group besides [George] could have made an ongoing concern of the alleged organization's reported primary exempt purpose -- research in cell regeneration -- during the years in issue."  Finally, the tax court factored into its analysis the fact that George "was the only 'member' of his group with control over the alleged organization's funds in his personal bank accounts."

Based on this evidence, the tax court could reasonably conclude that the core group consisted of individuals who were interested in George's supplements and advice, not members of an organization.  It is not clear how the core group members would have continued Biogenesis's alleged mission of building upon George's research in his absence when none of the core group members participated in the research and creation of the

_____

[7]  George argues the tax court should have given this witness's testimony less weight because "her function in the organization [preparing food for the retreats] had nothing to do with its legal status."  In other words, George argues that the tax court gave improper weight to the testimony of a witness he views as less persuasive than other core group members who testified. "[W]eighing the evidence . . . is uniquely the province of the [trial] court."  Fed. Refinance Co. v. Klock, 352 F.3d 16, 29 (1st Cir. 2003).  We thus find no error in the tax court's consideration of this testimony.

supplements or had access to funding.[8]  George argues that the tax court should have considered other evidence in its organizational calculus, such as the core group members' assistance with running the retreats and promoting George's supplements.  That George's supplements had an ardent following, however, does not change the crux of the tax court's analysis that the creation of the supplements and the control over the group's funding were not distinct from George.  George also claims that there would be no organization without the core group and retreat participants because he received from them critical feedback to improve his supplements.  We fail to see how this argument would prevent any sole proprietor's customers from being viewed as an organization.

Requiring evidence showing that Biogenesis could exist separate from George comports with general principles of tax law. Even if George intended to form an organization eventually, the tax code generally does not allow anticipatory assignments of income.  See United States v. Basye, 410 U.S. 441, 447 (1973) ("[I]ncome is taxed to the party who earns it and that liability may not be avoided through an anticipatory assignment of that

---

[8]  We also note that the supplement companies George dealt with viewed him as a vendor and were unaware of his affiliation with a charitable organization.  These companies made their checks out to George and were unaware of an organization called Biogenesis. This further supports the tax court's finding that no organization separate from Biogenesis existed.

income."). Thus, the income from the supplements and the interest earned could not be attributed to an organization (rather than George) until that plan to create an organization actually came to fruition. George has shown neither any sufficient evidence showing that he or the core group behaved as members of an organization nor any other objective indicia of an organization. We therefore conclude the tax court was not clearly erroneous in finding no organization existed during the relevant tax years.

## IV.

We need not go further. Because we find no organization, we need not address the parties' arguments about whether George's activities operated for profit or exclusively for the promotion of social welfare. The decision of the tax court is affirmed.

**Affirmed.**