T.C. Memo. 2020-27

UNITED STATES TAX COURT

DUNG T. LE AND NGHIA T. TRAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2108-16.                    Filed February 26, 2020.

Robert B. Creager, for petitioners.

Lisa Kathryn Hunter and Shaina E. Boatright, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  In a notice of deficiency dated November 3, 2015,

respondent determined deficiencies in petitioners' 2004, 2005, and 2006 Federal

income tax of $31,944, $44,178, and $40,706, respectively, and fraud penalties

[*2] under section 6663 of $23,958, $33,133.50, and $30,529.50, respectively.[1] [2]

In the notice of deficiency, respondent also determined in the alternative accuracy-related penalties under section 6662(a) for the years in issue.

After concessions,[3] the issues for decision are whether (1) the doctrine of collateral estoppel bars respondent from relitigating petitioners' tax liability for 2006; (2) petitioners failed to report gross receipts on Schedules C, Profit or Loss From Business, from their two nail salon businesses for 2004, 2005, and 2006; (3) petitioners are entitled to Schedule C deductions for 2004, 2005, and 2006, in excess of the amounts respondent allowed; (4) petitioners received additional State tax refunds in 2004 and 2006 of $675 and $63, respectively, which they failed to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners executed sequential Forms 872, Consent to Extend the Time to Assess Tax, between September 5, 2007, and August 4, 2015, to extend the assessment period of limitations in this case to June 30, 2016, for their timely filed joint 2004, 2005, and 2006 Federal income tax returns.

[3]Petitioners conceded gross receipts respondent determined, to the extent of the gross receipt amounts determined in the criminal proceeding for all years in issue. Petitioners also conceded the expense adjustments respondent made in the event that their civil tax liabilities are not limited to the amount of petitioner Le's criminal restitution. The only contested adjustments to gross receipts are respondent's determination of additional cash deposited in personal accounts and expenses paid in cash in each year.

**[*3]** report on their returns; (5) petitioner Le is liable for civil fraud penalties, pursuant to section 6663 (or alternatively accuracy-related penalties, pursuant to section 6662(a), for each year in issue); and (6) petitioner Tran is liable for accuracy-related penalties under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first stipulation of facts, the first supplemental stipulation of facts, the second supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Nebraska when they timely filed their petition.

Dung T. Le and Nghia T. Tran are currently married and were married at all times during 2004, 2005, and 2006. During the years in issue petitioners owned and operated two nail salon businesses, called CA Nails and Cali Nails, in Lincoln, Nebraska. Petitioners had owned and operated nail salons since the end of 1999 and had included income from the CA Nails salon on their 2001 and 2002 returns. Petitioner Nghia T. Tran is also known by or referred to as Nancy T. Tran, Nghia Hui Thitran, and Nancy Nghia Tran.

[*4] I.     Criminal Conviction

On March 20, 2013, petitioner Le was indicted on three counts of attempting to evade and defeat tax under section 7201, Attempt to Evade or Defeat Tax, for 2004, 2005, and 2006.  Count I of the indictment filed in the U.S. District Court for the District of Nebraska, in the criminal case of United States v. Le, No. 4:13CR3029, set forth the following charge against petitioner Le:

> On or about the 17th day of April, 2007, through on or about September 19, 2007, in the District of Nebraska, DUNG LE * * * did willfully attempt to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States of America for the calendar year 2006, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Income Tax Return, form 1040, on behalf of himself and his spouse, which was filed with the Internal Revenue Service.  In that return, it was stated that their joint taxable income for the calendar year was the sum of $0.00, and that the amount of tax due and owing thereon was the sum of $0.00.  In fact, as he then and there knew, their joint taxable income for the calendar year was the sum of $52,581.00, upon which joint taxable income was owing to the United States of America an income tax of $18,205.00.  Following the filing of the return for the 2006 calendar year, * * * [petitioner Le] continued to attempt to evade and defeat the tax due and owing by him, by providing false information in documents and false statements to Internal Revenue Service agents.
> In violation of Title 26, United States Code, Section 7201.

Similar charges for tax evasion pursuant to section 7201 were alleged against petitioner Le for 2004 and 2005 in Counts II and III.  On September 17, 2013, petitioner Le entered a plea of guilty to the charge set forth against him in

[*5] Count I of his indictment.  In exchange for his plea of guilty of Count I, Counts II and III were dismissed.

In his plea agreement filed on September 17, 2013, petitioner Le agreed that he committed each of the three elements of the crime:

1. Defendant Dung Le committed an affirmative act constituting an attempt to evade or defeat a tax or the payment thereof for calendar year 2006;
2. An additional tax was due and owing for calendar year 2006;[4] and
3. Defendant Dung Le's acts, in attempting to evade or defeat a tax or the payment thereof, were willful.

On December 6, 2013, the District Court entered its judgment pursuant to the plea agreement.  In connection with his plea, petitioner Le agreed to pay restitution of $33,332 to the Internal Revenue Service (IRS).  The restitution took into account additional business checks deposited into petitioners' personal accounts but did not include any cash deposited into petitioners' personal accounts.  Petitioner Le paid the restitution in full, and petitioners' 2006 account was credited for the $33,332 payment.  Petitioners and respondent agreed that petitioners would concede the expense adjustments respondent made for all years

_____

[4] Petitioner Le had an additional tax due and owing of $18,205 for 2006.

**[*6]** in issue if petitioners' civil tax liabilities were not limited to the $33,332

petitioner Le paid.[5]

II.    Bank Accounts

Petitioners maintained four bank accounts at Union Bank & Trust Co.

(Union Bank) during 2004 through 2006:

(1) a business checking account for Cali Nails (account number ending in

8816 in the name of Dung T. Le d.b.a. Cali Nails);

(2) a business checking account for CA Nails (account number ending in

6893 in the name of Dung T. Le d.b.a. CA Nails);

(3) a personal checking account (account number ending in 7157 in the

name of Dung T. Le and Nghia Hui Thitran); and

(4) a personal savings account (account number ending in 9905 in the name

of Dung T. Le).

Both petitioners were authorized signatories on the business checking

accounts (account numbers ending in 8816 and 6893), as well as their joint

personal checking account (account number ending in 7157).  Petitioner Le was

---

[5]In the first supplemental stipulation of facts the parties stipulated:  "In the event that petitioners' civil tax liabilities are not limited to the amount of petitioner Dung Le's criminal restitution, petitioners concede the expense adjustments made by respondent for all years at issue."

[*7] the only authorized signatory on the personal savings account (account number ending in 9905).

A.     Petitioner Le's Savings Account Number Ending in 9905

During 2004, 2005, and 2006, in increasing amounts each year, petitioner Le diverted large amounts of petitioners' business income by depositing customer checks from the nail salons into his personal savings account, which was in his name only.

In 2004, on 62 separate occasions, petitioner Le deposited business income from customer checks totaling $19,805.69 into his personal savings account. Petitioner Le deposited $40,001 in cash into his personal savings account in 2004. Petitioners did not include the $19,805.69 nor the $40,001 in their gross income on their Schedules C attached to their Form 1040 for 2004. By contrast, petitioner Le did deposit $142,212.11 in checks to petitioners' business accounts, which he included on petitioners' 2004 Schedules C.

In 2005, on 59 separate occasions, petitioner Le deposited business income from customer checks totaling $38,739 into his personal savings account. Petitioner Le deposited $37,210 in cash into his personal savings account in 2005. Petitioners did not include the $38,739 nor the $37,210 in their gross income on their Schedules C attached to their Form 1040 for 2005. By contrast, petitioner Le

[*8] did deposit $107,147.64 in checks and cash to petitioners' business accounts, which he included on petitioners' 2005 Schedules C.

In 2006, on 66 separate occasions, petitioner Le deposited business income from customer checks totaling $66,361.19 into his personal savings account. Petitioner Le deposited $18,100 in cash into his personal savings account in 2006. Petitioners did not include the $66,361.19 nor the $18,100 in gross income on their Schedules C attached to their Form 1040 for 2006. By contrast, petitioner Le did deposit $57,339.33 in checks and cash to petitioners' business accounts, which he included on petitioners' 2006 Schedules C.

Thus in 2004, 2005, and 2006 petitioner Le deposited a total of $219,955.69 into his personal savings account from customer checks and cash. By contrast, petitioners deposited a total of $306,699.08 in checks and cash to their business accounts during all three years, 2004, 2005, and 2006.

B.    Cash Transactions

During 2004, 2005, and 2006 petitioner Le routinely deposited business income consisting of customer checks into his personal accounts but took cash back in the same transactions. Consequently, each net amount he deposited was significantly less than the gross deposit. Petitioner Le made the deposits and endorsed the back of each check. The total dollar amount of the checks deposited

[*9] was significantly more than the amount of each net deposit. Petitioner Le regularly structured his deposits in this manner, negotiating business checks to his personal bank accounts and making significant cash withdrawals from the accounts in 2004, 2005, and 2006.

## C. Suspicious Activity Report

On September 8, 2004, Union Bank issued a Suspicious Activity Report.[6] Specifically, petitioner made $5,000 cash deposits at six different Union Bank branches, including two deposits on August 12, 2004, two on August 13, 2004, and two on August 14, 2004, for a total of $30,000. Petitioner Le was aware of the currency transaction reporting requirements and regularly structured the $30,000 cash deposits so that he could avoid signing the required declaration. Shortly thereafter, Union Bank sent petitioner Le a letter, dated August 17, 2004, indicating that it appeared he was operating the nail salon businesses "out of a personal savings account" and that he already had a business account for each business established at the bank. Union Bank then issued a copy of the Suspicious

---

[6]Under the Financial Recordkeeping and Reporting of Currency and Foreign Transactions Act of 1970 (Bank Secrecy Act), 31 U.S.C. secs. 5311-5332 (2006), banks are required to keep records and file reports of suspected money laundering and fraud. Under the Bank Secrecy Act, 31 U.S.C. sec. 5331, banks must report to the IRS cash transactions of more than $10,000 (daily aggregate amount) and report suspicious activity that might signal criminal activity.

[*10] Activity Report to petitioner Le on September 8, 2004, because of the number of cash transactions petitioner Le had made at different branches within a short time.

D. Business and Joint Accounts

During 2004, 2005, and 2006 petitioner Le also deposited a portion of the business income into the two business checking accounts at Union Bank. Petitioners deposited credit card payments directly to the respective business accounts during 2004 through 2006. Petitioners made only three cash deposits in 2004, three cash deposits in 2005, and zero cash deposits in 2006 into their business checking accounts. Petitioner Le frequently directed business customers to make checks payable to him rather than to petitioners' businesses. Petitioner Le diverted at least 4,260 business checks totaling over $148,121.38 to petitioners' personal accounts during 2004, 2005, and 2006. During the years in issue, petitioners reported on their joint tax returns business income that they deposited in their two business checking accounts but did not include business income they deposited in their joint personal accounts.

In 2004 petitioner Le deposited cash totaling $1,000 and $1,960 into the Cali Nails and CA Nails business bank accounts, respectively. On six separate occasions during 2004 petitioner Le deposited business income from customer

[*11] checks totaling $766 into petitioners' joint personal checking account. Petitioners did not include those deposited checks in gross income on their Schedule C for 2004.

In 2005 petitioners deposited cash totaling $1,800 and $2,000 into the Cali Nails and CA Nails business bank accounts, respectively. On 15 separate occasions during 2005 petitioner Le deposited business income from customer checks totaling $5,547 into petitioners' joint personal checking account. Petitioners did not include those deposited checks in gross income on their Schedule C for 2005.

In 2006 petitioners did not deposit any cash into the CA Nails and Cali Nails business accounts. On 22 separate occasions petitioner Le deposited business income from customer checks totaling $16,902.50 into petitioners' personal joint checking account. Petitioners did not include those deposited checks in gross income on their Schedule C for 2006.

III.    Petitioners' Gross Receipts

Petitioners did not use a cash register to record their sales, nor did they maintain a general ledger or any other contemporaneous record of the income and expenses of the nail salons. Petitioners hired a paid preparer for their 2004, 2005, and 2006 Federal income tax returns. For each year in issue petitioner Le prepared

[*12] a summary of income and expenses related to CA Nails and Cali Nails and provided those summaries to the return preparer to be used to prepare the Schedule C for each business. Since they had not maintained any business income ledgers, petitioner Le added the deposits into the respective business accounts for the years in issue and listed that amount as business income for each year. However, for 2004 he did not include the deposits for June and December, for both nail salons, of $45,355.83. Petitioner Le knew he had not included the business income for June and December 2004 but that he needed to include it. Petitioners also failed to disclose to the return preparer the taxable State tax refunds they received in 2004 and 2006.

Petitioners stipulated receiving gross receipts of $285,806.92, $292,563.89, and $319,783.01 for 2004, 2005, and 2006, respectively.[7] On their Schedules C, petitioners reported $240,239, $259,363, and $235,308 for 2004, 2005, and 2006, respectively. Thus, petitioners understated their business gross receipts from cash deposited into their business accounts and from checks for 2004, 2005, and 2006 by $45,567.92, $33,200.89, and $84,475.01, respectively.

---

[7]Respondent removed substantiated payments from the calculation of gross receipts. In fact, respondent excluded nearly $84,000 of checks from the bank deposits analysis, as these were items that were loosely substantiated as gifts or loans from friends or family.

[*13] For all years in issue, despite the frequency and the amounts of the business deposits into their personal checking and savings accounts, petitioner Le failed to add that income to the income figure he gave to his return preparer to file their returns. Thus, the income figures given to the return preparer were grossly understated. Further, petitioners did not provide any other records or supporting documentation to the return preparer from which the return preparer could determine whether the income figures for the business were correct. Petitioners' return preparer prepared their returns relying solely upon the summary sheets which petitioner Le provided.

IV.    Business Expenses

Petitioners attached to their 2004 Federal income tax return a Schedule C for each of their two businesses. On those Schedules C they reported gross receipts of $240,239 instead of the total amount of $341,460.06. After adjusting for cost of goods sold and business expenses, they reported a business loss of $22,345 for 2004.

Petitioners attached to their 2005 Federal income tax return a Schedule C for each of their two businesses. On those Schedules C they reported gross receipts of $259,363 instead of the total amount of $371,060.98. After adjusting

[*14] for cost of goods sold and business expenses, they reported a business profit of only $3,181 for 2005.

Petitioners attached to their 2006 Federal income tax return a Schedule C for each of their two businesses. On those Schedules C they reported gross receipts of $235,308 instead of the total amount of $359,444.01.[8] After adjusting for cost of goods sold and business expenses, they reported a business loss of $23,481 for 2006.

Respondent examined petitioners' business expenses and disallowed numerous claimed deductions for both businesses for all years in issue.[9] Respondent allowed deductions petitioners claimed for expenses to the extent they were substantiated.[10] Specifically, respondent made adjustments to the expenses of CA Nails for 2004, 2005, and 2006 of $6,168, $7,875, and $10,883, respectively, and to Cali Nails for 2004, 2005, and 2006 of $3,439, $3,978, and

---

[8]In the prosecution report and plea agreement in the criminal case, petitioner Le agreed that the two nail salons instead had 2006 gross receipts of $319,783.01. Respondent alleges petitioners' 2006 gross receipts were in fact $359,444,01.

[9]The disallowed unsubstantiated expenses were not a part of petitioner Le's criminal restitution amount.

[10]In 2004, 2005, and 2006 petitioners paid expenses of both of their nail salon businesses in cash totaling $13,075, $12,410, and $15,848, respectively. Respondent allowed deductions for the business expenses paid in cash with the exception of cash used for gambling ($1,500 per year).

[*15] $5,239, respectively.  Petitioners conceded the expense adjustments respondent made for all years in issue in the event that their civil tax liabilities were not limited to the amount of petitioner Le's criminal restitution.

V.    Audit and Notice of Deficiency

    A.    Audit

Petitioners timely filed joint Forms 1040 for the years in issue.  In 2007 the IRS began an examination of petitioners' 2004, 2005, and 2006 tax returns.  During the course of the examination, the revenue agent requested certain documents and information from petitioners.  When petitioners Le and Tran initially provided documents to the IRS revenue agent, they provided copies of bank statements but did not provide copies of all of the deposited checks for the accounts.  While the bank statements reflected the dates and amounts of deposits made, they did not provide information about what each deposit actually comprised.  Upon followup, petitioner Le provided some of the documents the revenue agent requested.

When respondent received the complete bank records, their markings revealed the business nature of the income petitioners had received.  The records consisted of checks with driver's license numbers, birth dates, and memos noting that a particular check was for nails or manicures or pedicures or tips.  However,

[*16] the documents that petitioner Le had submitted contained none of these notations. Before making copies, petitioner Le had taken off the notations on checks which would have easily identified them as income to his businesses. Instead, the information in each "memo" section was altered to characterize the payment as a gift, a loan, or personal income. Petitioner Le also copied routing information from other negotiated instruments to the backs of fabricated documents. Petitioner Le altered and submitted to respondent a total of 27 checks.

During meetings with the IRS revenue agent and the special agent, petitioner Le provided the agents with false information. Specifically, petitioner Le admitted he had changed the documents when the IRS revenue agent asked him to provide them. Petitioner Le admitted to the agents that he spent a lot of money on the nail businesses and did not want his wife, petitioner Tran, to know.

B.  Criminal Investigation Referral

After reviewing petitioners' responses and bank records, the IRS referred the case to the Criminal Investigation Division. The IRS concluded that the referral was appropriate for a variety of reasons including: untruthful responses to information document requests; numerous instances of small deposits which actually consisted of numerous business checks with cash back; petitioners' failure to report the business income deposited into their personal accounts; their failure

[*17] to include June and December 2004 business deposits in income; numerous alterations of records including whiting out, cutting, and pasting information on false checks to make the amounts appear nontaxable; unreported income; and petitioners' inconsistent statements.

C.      Supervisory Approval and Civil Penalties

On September 28, 2011, before petitioner Le's indictment, and again on February 6, 2014, after his guilty plea, the IRS group manager signed the Penalty Approval Form, approving both the section 6663 fraud penalties against petitioner Le and the section 6662(a) accuracy-related penalties for negligence and substantial understatements of income tax, as an alternative position, for both petitioners for 2004, 2005, and 2006.

D.      Notice of Deficiency

On November 3, 2015, respondent issued petitioners a notice of deficiency determining deficiencies in income tax for 2004, 2005, and 2006 of $31,944, $44,178, and $40,706, respectively.  Respondent also determined in the notice of deficiency that petitioner Le was liable for section 6663 fraud penalties for 2004, 2005, and 2006 of $23,958, $33,133.50, and $30,529.50, respectively. Alternatively, respondent determined that petitioners were liable for the accuracy-

**[*18]** related penalty, pursuant to section 6662(a), for any portion of an underpayment to which it was determined that the fraud penalty did not apply.[11]

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.[12] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For the presumption of correctness to attach in cases involving failure to report income, the Commissioner must provide some predicate evidence connecting the taxpayer with the income-producing activity. See Day v. Commissioner, 975 F.2d 534, 537 (8th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-140; De Cavalcante v. Commissioner, 620 F.2d 23 (3d Cir. 1980), aff'g Barrasso v. Commissioner, T.C. Memo. 1978-432; Tucker v. Commissioner, T.C. Memo. 2014-51, at *12. Once the Commissioner has produced evidence

---

[11]Respondent sent a duplicate notice of deficiency to each petitioner on November 12, 2015.

[12]Sec. 7491(a) provides that in certain circumstances the burden of proof with respect to factual matters may shift to the Commissioner. Petitioners do not argue that sec. 7491(a) applies, nor have they shown that they meet its requirements to shift the burden of proof. Consequently, the burden of proof remains with petitioners, except as otherwise described herein.

[*19] linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74 (1986).

In the case of the fraud penalty under section 6663, the Commissioner bears the burden of proof by clear and convincing evidence. Sec. 7454(a); Rule 142(b); see Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

Petitioners failed to deposit all of their business income in their business accounts and deposited virtually no cash in 2004 and 2005 and no cash whatsoever in 2006. They also failed to maintain adequate books and records. Respondent reconstructed petitioners' income through a detailed and comprehensive analysis of all of their business and personal bank accounts. The bank deposits method of reconstruction has long been sanctioned by the courts as a reasonable method of determining a taxpayer's income. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Edwards v. Commissioner, T.C. Memo. 2014-57, at *12.

Respondent's bank deposits analysis reflected numerous cash deposits which petitioners failed to establish were from nontaxable sources. Bank deposits

[*20] constitute prima facie evidence of taxable income. Tokarski v. Commissioner, 87 T.C. at 77; see also Parks v. Commissioner, 94 T.C. 654, 658 (1990). Respondent's method used to determine the income was rationally based, reasonable, and logical. Therefore, it is not arbitrary and is entitled to the presumption of correctness. According to the U.S. Court of Appeals for the Eighth Circuit:

> Once the deposits were shown to be in the nature of income and to exceed what the taxpayers had reported as income, it became the taxpayers' responsibility to persuade the trier of fact that the deposits were nontaxable. * * * "Any other rule would burden the Government with investigating the many possible nontaxable sources of income . . . , a matter peculiarly within the knowledge of the defendant." Zeeman v. United States, 395 F.2d 861, 867 (2d Cir. 1968). * * *

Dodge v. Commissioner, 981 F.2d 350, 354 (8th Cir. 1992), aff'g in part, rev'g in part 96 T.C. 172 (1991).

The Court is satisfied that respondent's determinations set forth in the notice of deficiency are entitled to the general presumption of correctness. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Day v. Commissioner, 975 F.2d at 537; Powerstein v. Commissioner, T.C. Memo. 2011-271.

**[\*21]** II.     <u>Collateral Estoppel Principles</u>

Petitioner Le also argues that the doctrine of collateral estoppel bars respondent from relitigating his 2006 tax liability, as that amount was already determined in his criminal restitution order.  Collateral estoppel bars relitigation of an issue where (1) the party sought to be precluded in the second suit was a party, or privy to a party, in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was "actually litigated" in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was "essential to the prior judgment." <u>Anderson v. Genuine Parts Co.</u>, 128 F.3d 1267, 1273 (8th Cir. 1997).

The Court concludes collateral estoppel is inapplicable here.  An order for criminal restitution is not essential to the judgment of conviction against a criminal defendant "because it * * * [is] not an element of the crime of conviction." <u>Hickman v. Commissioner</u>, 183 F.3d 535, 538 (6th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-566.  In a criminal conviction the "jury * * * [is] not asked to determine * * * [a] specific tax liability * * * [and] the district judge enjoy[s] considerable discretion as to whether he should order restitution, and if so, as to the amount." <u>Id.</u>

[*22] Furthermore, it is well settled that a sentencing court's ordering of (or decision not to order) restitution has no effect on the IRS' authority to determine the taxpayer's correct civil tax liability and to assess and collect that liability. See Morse v. Commissioner, 419 F.3d 829, 833-835 (8th Cir. 2005) (holding that sentencing court's restitution order does not preclude Commissioner from litigating defendant's deficiency), aff'g T.C. Memo. 2003-332; Hickman v. Commissioner, 183 F.3d at 537-538.

Because the amount of restitution was not essential to the judgment in the criminal prosecution, the Court finds that respondent is not precluded from litigating petitioner Le's civil tax liability for 2004, 2005, and 2006.

III.    Unreported Income

In the notice of deficiency, respondent determined that petitioners had additional income from two sources:  (1) additional gross receipts from their nail salon businesses for 2004, 2005, and 2006 and (2) additional taxable State tax refunds received in 2004 and 2006.

Under section 61(a), "gross income means all income from whatever source derived". See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Specifically included in the definition of gross income is gross income derived from business. Sec. 61(a)(2). While it is axiomatic that section 61(a) broadly

[*23] applies to any accession to wealth, statutory exclusions from income are narrowly applied.  See Commissioner v. Schleier, 515 U.S. 323, 328 (1995); United States v. Burke, 504 U.S. 229, 233 (1992).

Petitioners had additional gross receipts from (1) unreported deposits to the business bank accounts in June and December 2004 which petitioners have admitted, and the parties have stipulated as to the related amount of gross receipts; (2) unreported deposits of business checks into petitioners' personal savings and checking accounts in 2004, 2005, and 2006 which petitioners have admitted and the parties have stipulated as to the related amount of gross receipts; (3) unsubstantiated cash deposits to petitioners' personal savings and checking accounts in 2004, 2005, and 2006; and (4) expenses paid by the businesses in cash during 2004, 2005, and 2006.  Therefore, the only gross receipts items remaining in dispute at trial were the cash deposits and expenses paid in cash.

While petitioners admittedly received cash at their two businesses, they deposited only nominal amounts into the business accounts during 2004 and 2005, totaling $2,960 and $3,800, respectively.  They did not deposit any cash whatsoever in 2006.  While conceding that they received cash, petitioners cannot account for the amount because they failed to keep any records of the cash they received.  Further, they failed to deposit all of the cash they received.  In contrast,

[*24] petitioners deposited cash totaling $40,408, $64,870, and $23,100 into their personal checking and savings accounts in 2004, 2005, and 2006, respectively. Respondent determined that these amounts are taxable gross receipts and attributed 50% of the amount to each business each year. Petitioners bear the burden of proving that respondent's determination of unreported income is erroneous. See Parks v. Commissioner, 94 T.C. at 658.

Petitioners allege that the cash deposits were gifts or loans from family and friends and are therefore not taxable. Specifically, they claimed that in the culture they grew up in, if someone in the family needs money, it is customary for the family to lend money. However, the IRS revenue agent accounted for all of the amounts which petitioners substantiated as coming from family and friends during the years in issue.[13] Petitioners failed to substantiate that any additional cash deposited into their accounts is from a nontaxable source, such as gifts or loans from family members. In fact, their actions suggest the contrary. Petitioners intentionally structured cash deposits totaling $30,000 by making six $5,000 deposits at six different bank locations over a three-day period in 2004.

_____

[13]These amounts totaled $42,517.88, $6,900, and $34,500 in 2004, 2005, and 2006, respectively, and were excluded from income. The revenue agent also excluded from taxable income transfers between accounts and other amounts of $28,735.72, $192,481.31, and $96,106.73 in 2004, 2005, and 2006, respectively.

**[*25]** Petitioners intentionally structured these deposits in an attempt to avoid the currency transaction reporting requirements.

Petitioner Le also regularly and consistently structured his bank deposits by cashing numerous customer checks, taking most of the amount back in cash, and making minimal deposits so that the net amounts deposited were significantly less than the actual amount of business income. Thus, looking at the bank statements, petitioners' income appears less than they actually received from their businesses. The Court finds that by structuring his bank deposits in this manner, petitioner Le deposited only a fraction of petitioners' total business income.

Petitioners have never specifically challenged the State tax refunds aside from their general assertion that their tax liabilities for the years in issue are limited to criminal restitution amounts, nor did they address the issue on briefs. Accordingly, the issue regarding whether petitioners received and failed to report additional State tax refunds in 2004 and 2006 is deemed conceded. See Rule 34(b)(4). The Court concludes that petitioners were negligent in failing to report the State tax refunds and are therefore liable for accuracy-related penalties under section 6662(a) on this issue. Respondent's determination of unreported taxable State tax refunds petitioners received in 2004 and 2006, as set forth in the notice of deficiency, is deemed correct, and that determination is sustained.

[*26] IV.    Business Expense Deductions

Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  All deductions are strictly a matter of legislative grace, and petitioners have the burden of establishing entitlement to any claimed deduction.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. at 115. Taxpayers are required to substantiate claimed deductions and credits by maintaining records.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Petitioners have the burden to meet the requirements of section 162(a), as well as to substantiate any amounts reported as expenses.

The criminal restitution amount did not include the disallowed unsubstantiated expenses.  While petitioners have maintained that they are not liable for any deficiency in excess of the amount of restitution ordered in the criminal case, they conceded that the restitution amount included only adjustments to gross receipts of their two nail salons and the business expenses that respondent allowed.[14]  Petitioners failed to address and substantiate any of the disallowed

---

[14]Respondent allowed deductions for expenses petitioners paid in cash in 2004, 2005, and 2006, totaling $13,075, $12,410, and $15,848, respectively.

[*27] expenses, which were not included in the criminal restitution amount, at trial. Therefore, the Court finds that petitioners failed to establish their entitlement to any expense deductions in excess of those respondent allowed.

## V.    Civil Fraud Penalty

Respondent asserts that for each year in issue petitioner Le committed fraud in preparing and filing his Federal income tax return. Consequently, respondent argues he is liable for fraud penalties under section 6663 for 2004, 2005, and 2006. As a threshold matter, respondent must show that he complied with section 6751(b)(1), which requires that certain penalties be personally approved in writing by the immediate supervisor of the individual making the determination. See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Frost v. Commissioner, 154 T.C. __, __ (slip op. at 16-17) (Jan. 7, 2020); Clay v. Commissioner, 152 T.C. 223, 248 (2019). Respondent approved the penalty after the conclusion of the criminal case and before issuing a notice of deficiency. Thus, respondent has satisfied his burden of production with regard to the supervisory approval requirement of section 6751(b).

[*28] A.    General Principles

If any part of the underpayment of tax required to be shown on a return is due to fraud, there is an addition to tax of 75% of the portion of the underpayment that is attributable to fraud.  See sec. 6663(a).  If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as due to fraud unless the taxpayer can establish by a preponderance of the evidence that portion of the underpayment which is not attributable to fraud.  See sec. 6663(b); DiLeo v. Commissioner, 96 T.C. at 874; Taylor v. Commissioner, T.C. Memo. 1995-269, 1995 WL 363202, at *5, aff'd without published opinion, 108 F.3d 1388 (10th Cir. 1997).  Fraud is the intentional wrongdoing of a taxpayer to evade tax believed to be owing.  Petzoldt v. Commissioner, 92 T.C. at 698.  Fraud is never imputed or presumed.  Parks v. Commissioner, 94 T.C. at 660.  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  Id.; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978).

To establish fraud, the Commissioner must prove for each year that:  (1) an underpayment of tax exists and (2) the taxpayer had fraudulent intent, i.e., that the taxpayer intended to evade taxes known to be owing by conduct intended to

**[*29]** conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. at 660-661; see Clayton v. Commissioner, 102 T.C. at 647. Because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence, and reasonable inferences may be drawn from the relevant facts. Spies v. United States, 317 U.S. 492, 499 (1943); Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601. The taxpayer's entire course of conduct may be examined to establish the requisite intent. Stone v. Commissioner, 56 T.C. 213, 224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969); Romer v. Commissioner, T.C. Memo. 2001-168.

Petitioner Le offers no specific evidence to distinguish any portion of the deficiency regarding fraud; thus, if respondent establishes that any portion of any underpayment is attributable to fraud, the entirety will generally be treated as such.

B.     Underpayment of Income Tax

Petitioners stipulated that an underpayment of tax existed for each of the years in issue, as they agreed that certain taxable gross receipts were omitted from their returns. Petitioners conceded two errors with respect to their gross receipts. First, petitioner Le admitted that his computation of gross receipts for 2004 which was used to prepare their Federal income tax return omitted all deposits to the

[*30] business bank accounts for the months of June and December. Petitioner Le further admitted that his computation of gross receipts omitted checks that he deposited into the joint personal checking account and petitioner Le's personal savings account.

Additionally, petitioner Le failed to report gross receipts from the nail salons from cash transactions. Petitioners have also failed to substantiate their claims that these cash deposits were nontaxable gifts or loans from family.

Respondent also asserted an underpayment of tax attributable to fraud occurred with respect to petitioners' unsubstantiated business expenses. This Court agrees. Petitioner Le provided expense information to their tax preparer on the same summary sheets used to prepare the income figures. Petitioners did not maintain books and records and have provided no justification for the amounts listed on their summary sheets.

When the allegations of fraud are intertwined with unreported income and indirectly reconstructed income, as they are in this case, the Commissioner may prove an underpayment by proving a likely source of the unreported income. See Holland v. United States, 348 U.S. 121, 132-138 (1954); Brooks v. Commissioner, 82 T.C. 413, 431-432 (1984), aff'd without published opinion, 772 F.2d 910 (9th Cir. 1985). Respondent has shown sources of unreported income to petitioners

**[*31]** from both CA Nails and Cali Nails, petitioners' two businesses. Petitioners have failed to show that the additional receipts were fully offset by deductible expenses. As a result, it is established by clear and convincing evidence that petitioners had an underpayment of tax for each year in issue.

### C.    Fraudulent Intent

In determining whether there was fraudulent intent, the Court will look at a nonexclusive list of factors, or "badges of fraud". See Bradford v. Commissioner, 796 F.2d at 307; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Taylor v. Commissioner, 1995 WL 363202, at *5. Those factors include: (1) understating income; (2) keeping inadequate records; (3) giving implausible or inconsistent explanations of behavior; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; and (7) dealing extensively in cash. See Spies, 317 U.S. at 499. No single factor is dispositive; however, the existence of several factors "is persuasive circumstantial evidence of fraud." Vanover v. Commissioner, T.C. Memo. 2012-79, 2012 WL 952871, at *4.

### 1.    Understating Income

A pattern of consistent underreporting of income for a number of years is strong evidence of fraud. Estate of Mazzoni v. Commissioner, 451 F.2d 197, 202

[*32] (3d Cir. 1971), aff'g T.C. Memo. 1970-37 and T.C. Memo. 1970-144; Otsuki v. Commissioner, 53 T.C. at 108. Petitioner Le consistently and substantially understated petitioners' business income. In particular, over this period they understated their gross receipts from their nail salon businesses by $45,567.92 for 2004, $33,200.89 for 2005, and $84,475.01 for 2006. Petitioner Le also altered numerous checks and bank records and submitted these altered documents to respondent in an attempt to conceal petitioners' correct taxable income and tax and the fraudulent nature of their returns. Petitioners have offered no explanation for understating these gross receipts other than to contend that portions of these amounts represented gifts or loans that petitioners received. Petitioner Le knew that petitioners' 2004, 2005, and 2006 returns failed to report substantial amounts of taxable income at the time the returns were filed. He intentionally understated petitioners' taxable income fraudulently and with the intent to evade tax for the years in issue. This factor weighs against petitioner Le for the years in issue.

2.    Keeping Inadequate Records

A taxpayer's failure to maintain adequate books and records is a badge of fraud. Bradford v. Commissioner, 796 F.2d at 308; Petzoldt v. Commissioner, 92 T.C. at 700; Roudakov v. Commissioner, T.C. Memo. 2014-193, at *17-*18. In

[*33] this case petitioners failed to use a cash register to record their sales, failed to maintain a general ledger or any other contemporaneous record of the income and expenses of the nail salons, and failed to present any books and records of business income to respondent other than bank statements. This factor weighs against petitioner Le for the years in issue.

### 3. Giving Implausible or Inconsistent Explanations of Behavior

A taxpayer's implausible or inconsistent explanations for his actions may constitute circumstantial evidence of fraudulent intent. Vanover v. Commissioner, T.C. Memo. 2012-79. Petitioner Le gave implausible and inconsistent explanations of petitioners' behavior. For instance, petitioners claimed that the nail salons did not receive much cash and that what little cash they did receive was used to buy supplies. However, over the three years in issue, petitioner Le deposited $95,311 in cash into his personal savings account. Despite telling the special agent who was investigating the criminal case against petitioners that they deposited cash and checks about once a week into the business accounts, petitioners in fact made three cash deposits in 2004, three cash deposits in 2005, and zero cash deposits in 2006. Petitioner Le admitted he had lied to the IRS agents in an effort to substantiate deposits and to mischaracterize their assets. Petitioner Le did this in order to make it appear that the checks were a nontaxable

[*34] source of income, rather than a taxable source. This factor weighs against petitioner Le for the years in issue.

### 4. Concealing Income or Assets

Intent to evade tax may also be inferred from the concealment of income. Spies, 317 U.S. at 499. Petitioner Le went to great lengths to conceal income from the IRS. Petitioner Le directed business customers to make checks payable to him rather than to petitioners' businesses for the purpose of concealing taxable income which petitioners had failed to report on their income tax returns. Petitioner Le diverted at least 4,260 business checks totaling over $148,121.38 to petitioners' personal accounts during 2004, 2005, and 2006. Moreover, petitioner Le intentionally provided incomplete, inaccurate, and misleading information to petitioners' return preparer for the purpose of understating their taxable income. Evidence that a taxpayer provided incomplete or misleading information to his return preparer is also circumstantial evidence of fraud. See Vanover v. Commissioner, T.C. Memo. 2012-79.

Petitioner Le also concealed income to avoid Federal currency transaction reporting rules. Over the three-day period from August 12 through 14, 2004, petitioner Le deposited cash totaling $30,000 in six transactions, depositing $5,000 at each of six different branches of Union Bank. Petitioner Le also

**[\*35]** concealed income through a scheme of structuring his deposits to make it appear that he had much less income than he actually received. He routinely made minimal deposits which involved significantly more business income, which he took back in cash. By structuring his deposits in this manner, petitioner Le was able to conceal large amounts of income from petitioners' bank statements. Petitioner Le engaged in this structuring scheme frequently and consistently over the years in issue. This deliberate attempt to keep his income off his bank statements indicates petitioner Le's intent to conceal his income and is another badge of fraud. This factor weighs against petitioner Le for the years in issue.

### 5. Failing To Cooperate With Tax Authorities

This Court has routinely inferred fraudulent intent from a taxpayer's failure to cooperate with tax authorities. See, e.g., McClellan v. Commissioner, T.C. Memo. 2013-251, at \*28; Good v. Commissioner, T.C. Memo. 2012-323, at \*52; see also Gagliardi v. United States, 81 Fed. Cl. 772, 783 (2008). Petitioner Le made numerous false statements and representations to respondent's agents and was uncooperative during the investigation of this case. Moreover, he attempted to subvert the investigation by responding to the Government's information document requests with fabricated documents. Petitioner Le went to great lengths to ask friends and family members to write him checks in amounts equal to certain

**[\*36]** deposits in an attempt to show that the deposits were not taxable.  In an effort to pass off these checks as authentic, he went so far as to copy routing information from other negotiated instruments to the back of the fabricated documents.  At the very least, the bank's August 17, 2004, letter in regard to petitioner Le's cash deposits should have put him on notice that his large volume of deposits to petitioners' personal accounts was an improper way to conduct his business affairs.  Yet despite this information, petitioner Le continued to operate his business improperly, and his fraudulent scheme continued to develop over the next two years.  This factor weighs against petitioner Le for the years in issue.

6. Engaging in Illegal Activities

Participation in illegal activity, its concealment, and criminal prosecution thereof are badges of fraud.  Petzoldt v. Commissioner, 92 T.C. at 700.  Petitioner Le was indicted on three counts of tax evasion pursuant to section 7201 for 2004, 2005, and 2006.  In sum, the counts charged that he filed fraudulent returns which he knew at the time reported insufficient taxable income.  He later continued to evade tax by providing false information to respondent's revenue agent.  Petitioner Le pleaded guilty to tax evasion, pursuant to section 7201 for 2006.  Counts II and III relating to 2004 and 2005 were dismissed in exchange for the guilty plea.  The conviction for 2006 is conclusive evidence of fraud for that year, and

**[*37]** circumstantial evidence of fraud for the years for which he did not plead guilty.  See Moore v. Commissioner, T.C. Memo. 2001-77.  The badges of fraud related to criminal activity clearly apply in this case.  This factor weighs against petitioner Le for the years in issue.

> 7.    Dealing Extensively in Cash

Dealing in cash is also considered a badge of fraud because it is indicative of a taxpayer's attempt to avoid scrutiny of his finances.  George v. Commissioner, T.C. Memo. 2015-158, at *21, aff'd, 837 F.3d 79 (1st Cir. 2016); see also Bradford v. Commissioner, 796 F.2d at 308; Petzoldt v. Commissioner, 92 T.C. at 702; Roudakov v. Commissioner, at *17-*18.  Petitioner Le dealt extensively in cash over the three-year period in issue.  He attempted to avoid scrutiny of petitioners' transactions by intentionally structuring cash deposits to avoid Federal currency transaction reporting requirements.  He made significant cash deposits to petitioners' personal accounts and further tried to conceal the actual amount of business income through a consistent pattern of cashing business checks, taking large amounts of cash back, and making minimal deposits.  Thus, by converting the income to cash, petitioner Le kept the actual amount of business income off the bank statements.  This factor weighs against petitioner Le for the years in issue.

[*38] Petitioner Le knew that the tax returns he filed were fraudulent. He engaged in a scheme to avoid tax for the years in issue by diverting checks and cash from the two nail salons and depositing them in his personal accounts, thereby understating or otherwise concealing his income. He also dealt extensively in cash during the years in issue. During 2004, 2005, and 2006 petitioner Le systematically deposited ever-increasing amounts of business income to petitioners' personal accounts and failed to include that income in the tax summaries that he gave to his return preparer for the purpose of preparing petitioners' returns. Petitioner Le further failed to provide his return preparer with any other underlying records that would reveal petitioners' actual business income. Thus, by concealing their income from his return preparer, he ensured that not all of their income was included on their income tax returns. Finally, petitioner Le failed to cooperate with tax authorities during the investigation of his case. On the basis of the badges of fraud present here, this Court finds petitioner Le liable for the civil fraud penalty under section 6663 for 2004, 2005, and 2006.

VI.  Accuracy-Related Penalty

The accuracy-related penalty cannot be imposed on one spouse where the other spouse is liable for the fraud penalty, as this would lead to impermissible stacking of penalties. See sec. 6662(b); Said v. Commissioner, T.C. Memo.

[*39] 2003-148, aff'd, 112 F. App'x 608 (9th Cir. 2004). Respondent has not asserted fraud penalties against petitioner Tran but alleges that she is liable for the section 6662(a) accuracy-related penalty for each year in issue.

Petitioner Le bears principal responsibility for the false statements made to, and the lack of cooperation with, the IRS revenue agent. Unlike her husband, petitioner Tran did not present testimony lacking credibility at trial. Also unlike her husband, she did not actively participate in the deposits and manipulation of the business accounts or interaction with the preparation of the tax returns. Because petitioner Le is liable for the section 6663 fraud penalty for each year in issue, petitioner Tran is not liable for the accuracy-related penalties.

VII. Conclusion

Petitioners failed to report gross receipts from their nail salons of $45,567.92, $33,200.89, and $84,475.01 for 2004, 2005, and 2006, respectively. Furthermore, petitioners failed to substantiate any of the expenses respondent disallowed. The Court finds that for each year in issue petitioner Le committed fraud in preparing and filing his Federal income tax return. Consequently, he is liable for the fraud penalties under section 6663 for 2004, 2005, and 2006. In addition, petitioners also failed to report additional State tax refunds of $675 and

**[\*40]** $63 on their 2004 and 2006 tax returns, respectively.  Consequently, they are liable for negligence penalties under section 6662(a) for 2004 and 2006.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.